April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

SAMUEL LEGGETT and JAMES A. BURTIS, The PRESIDENT and DIRECTORS of the FRANKLIN BANK of the City of New-York, and JAMES KENT, Receiver for said Bank, v. The NEW-JERSEY MANUFACTURING and BANKING COMPANY, and JAMES VANDERPOOL, SAMUEL CASSEDY and ARCHER GIFFORD, Receivers, &c.

The powers of a corporation are, strictly speaking, two-fold; those that are derived from express grant, and those that are incident and necessarily ap-pertain to it, whether expressed in the grant or not.

The power to make by-laws, to make and use a common seal, and the right to sue, are incident to every corporation.

In modern times, it has been usual to embrace all these incidental powers in the act of incorporation, so that it may now be considered a general rule, that the powers of a corporation are regulated and defined by the act which gives it existence.

A corporation is strictly limited to the exercise of the powers specifically con-ferred upon it; and the exercise of the corporate franchise cannot be ex-tended beyond the letter and spirit of the act of incorporation.

Corporations, like natural persons, are bound by the acts and contracts of their agents, done and made within the scope of their authority.

The president and cashier of a bank, as such, have no power to execute, in the name and behalf of the corporation, a mortgage or conveyance of real estate.

What are the appropriate duties and powers of the president and cashier of a bank.

The appearance of a corporate seal to an instrument, is evidence that it was affixed by proper authority. A mortgage, signed by the president and cash-ier of a bank, and sealed with the corporate seal, is, *prima facie*, duly and lawfully executed.

But, while the common seal is held evidence of the assent and act of the cor-poration, the court may look beyond the seal, and inquire in what manner, and by what authority, it was affixed; and it may be shown that it was affixed without proper authority. The burden of proof is on the party ob-jecting.

In the act incorporating *The New-Jersey Manufacturing and Banking Com-pany*, the company are declared " capable in law of purchasing, holding and conveying, any estate, real or personal, for the use of the corporation." This right is afterwards modified, so that the real estate which it may hold shall be no more than is necessary for its accommodation in the transaction of business, or such as may be acquired upon sale or otherwise, for the pur-pose of securing debts due to the corporation. The banking house was ne-cessary for the accommodation of the company in the transaction of its bu-

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

siness.  It was lawfully held, and might be lawfully conveyed for the use of the corporation,

A mortgage is a conveyance; it is an alienation of the estate; and whether in payment of a debt, or as security, direct or collateral, it was for the use of the corporation, and might lawfully be given,  In giving it, the company acted within their authority.

The charter of the New-Jersey Manufacturing and Banking Company also provides, "that all the affairs, property and concerns of the said corporation, shall be managed and conducted by eleven directors, who shall be elected annually; and that the directors for the time being, or a majority of them, shall have power to make and publish such bye-laws, rules and regulations, as to them shall appear needful and proper, touching the government of the said corporation, the management and disposition of the stock, business and effects thereof, and all such others as may appertain to the concerns of said corporation."  By this provision, the general power over the affairs of the corporation, was committed to the board of directors; and a mortgage executed under the authority of that board, would be valid.

But a mortgage signed by the president and cashier, with the corporate seal affixed by them, without the authority or concurrence of the board of directors, is not a valid instrument.

Where the board of directors appointed " a finance committee," with "a general authority in collecting and providing ways and means, and negociating financial operations, and the power of discounting,"—the powers of this committee were purely financial: they had authority to discount and provide ways and means to carry on the ordinary operations of the bank, but had no right to mortgage real estate.

THE controversy in this case is between the receiver of the Franklin Bank of the city of New-York, and the receivers of the New-Jersey Manufacturing and Banking company, and grows out of a mortgage alleged to have been given by the last named corporation, to Samuel Leggett and James A. Burtis, in trust for the Franklin Bank.  The mortgage, with the bond accompanying it, bears date on the 19th January, 1828, and is for the sum of ten thousand dollars.  It conveys the banking-house and property at Hoboken.  The bill is filed to foreclose the defendants' equity of redemption, and for a sale of the mortgaged premises.  The receivers have answered.  They admit the existence of the bond and mortgage, as set out in the bill; but allege by way of defence, that Aaron Ogden Dayton, the president, and William Munn, the cashier, who executed the mortgage, were not authorised or empowered by the directors, or by the act of incorporation, or in any other manner, to mortgage,

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

sell or convey the real estate of the bank ; and that the corporate seal was affixed to the bond and mortgage, and the same were signed by the president and cashier, without the order or authority of the said Manufacturing and Banking company, and without any vote or resolve of the directors ; and that the Franklin Bank had notice of the fact.   They also deny that the bond and mortgage are the deeds of the corporation.

There are other matters set up in the answer, touching the operation of the bond and mortgage, in case they should be considered valid instruments, which it is not necessary here to mention.

*W. Pennington*, for the complainant.   The bill in this case is filed to foreclose a mortgage, given by the New-Jersey Manufacturing and Banking company, (commonly called *The Hoboken Bank*,) to Leggett and Burtis, for the benefit of the Franklin Bank.   A decree, *pro confesso*, was taken against the Hoboken Bank.   But the receivers have put in an answer, which raises two questions :—Whether the bond and mortgage are valid instruments ; and, if valid, whether the defendants are entitled to the benefit of certain deposits.

1. The president and cashier, and all the directors who have spoken to the point, declare, that the mortgage was necesssry and proper.   They say, it would have been ratified by the board if it had been presented to them.   This relieves the case from all imputation of fraud.   The board, it appears, seldom met. They appointed a *finance committee*, consisting of the president, the cashier, and one of the directors ; who had charge of the affairs of the bank generally, and, some of the witnesses say, did all the business.   The rule of corporations is, that a majority must govern ; so it is where there is a committee.   A majority of this committee did assent to the mortgage.   The president and cashier signed the bond and mortgage, and they affixed to it the corporate seal, which is the highest evidence of an act of the corporation.

But it is objected, that the president and cashier were not authorized to make the mortgage ; that it was done without the order of the board of directors ; and that this was known to Leg-

April, 1832.

Leggett et al.
v
The N.J. Ma.
& Banking
Co. et al.

gett and the Franklin Bank. This position we deny. There is express evidence to the contrary. The subject came up in a negociation between Leggett and Dayton, the two presidents. The finance committee proposed to give a mortgage for ten thousand dollars. Some difficulty arose about the ratification of the board. Leggett said he would trust to a subsequent ratification ; but on the 12th January, (a week before the execution of the mortgage,) Dayton wrote to Leggett that he would call a special meeting of the board with reference to that matter. After receiving this letter, Leggett had no farther conversation with Dayton until after he received the mortgage, (which was executed on the 19th January, 1828,) and he had a right to suppose that the measure had received the sanction of the board. Besides, the affidavit of the cashier, indorsed on the back of the mortgage, states, that it had received the sanction of the board. The fact that they kept no minutes, cannot help the company. When a man innocently receives a bond from a corporation, under the corporate seal, and signed by the proper officer, it is good against the corporation, especially when the corporation have received the benefit ; and Leggett says the money was paid. The corporate seal itself, (though affixed by an officer *de facto*,) is evidence of the assent of the corporation : *Skin. R.* 2 ; 2 *Bac. Ab.* 15 ; 1 *Kyd on C.* 308 to 317.

2. If the mortgage is valid, the defendants say they are entitled to a reference, to ascertain the amount of a demand against the Franklin Bank for paper deposited, and lost for want of prosecution. We say not. When paper is left for collection, the Bank is bound to make demand, but not to prosecute. Again, the proceeding here is *in rem*. It admits of no offset, if the money was advanced on the mortgage, as we say it was. If it was given as a mere security for an existing demand, then there must be a reference : *Hop. R.* 270. We ask that the mortgage be declared valid, and that it be referred to a master to ascertain the amount due upon it.

*E. Van Arsdale, sen.* for the defendants. The controversy is between the receivers of the two banks. No consideration passed from Leggett and Burtis, the mortgagees, to the Hoboken

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

Bank, at the time the mortgage was given. As to them, it is void for want of consideration. But there is evidence that the object was to secure an old debt to the Franklin Bank. The declaration of trust is, to liquidate the account of William Munn, the cashier of the Hoboken Bank. We insist,

1. That the corporation was not capable of making the mortgage. This depends upon their charter, to which we must give the proper construction. A corporation can act only in the manner prescribed by their charter. If they depart from this, they exceed their powers, and the act is void: 2 *Cranch*, 166; 2 *Dow P. C.* 523; 1 *Peters*, 71, 72; 2 *D. and E.* 171. By their charter, the New-Jersey Manufacturing and Banking company have a limited power, of purchasing, holding and conveying real estate, for certain purposes: but no power to mortgage; such a power is foreign to the objects of the institution. It is a bank. It is no part of banking business to mortgage real estate. The proper business of banking, is receiving money in deposit, discounting notes, buying and selling bills of exchange, &c.; and however convenient it might be to mortgage, at certain times or for certain purposes, yet no argument drawn from convenience can enlarge the powers of a corporation: 4 *Peters R.* 169.

2. But if the corporation have the power, we say the mortgage was not duly executed. The business and affairs of the corporation are, by the charter, to be managed by a board of eleven directors. The corporate seal was affixed without the authority of this board. The president says there was no previous order of the board; the cashier says there was none that he knows of; and a majority of the directors (who have been examined) say the same thing. We are in possession of the fact that there was no previous order. It is said, however, that if the directors afterwards confirmed it, it is sufficient. But no such confirmation appears. On the contrary, it is in evidence that there was no meeting of the board, from the date of the mortgage, (19th January, 1828,) to the 4th June following. The minutes of that day make no mention of the mortgage, and before that time the Franklin Bank had broke, and their property was in the hands of a receiver. We have therefore established the negative. But they rely on the affidavit of Munn, the cash-

69

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

ier, endorsed on the mortgage; which states, that it was approved by the board. This was indorsed five days after the date of the mortgage, and after it had been credited on the books of the Franklin Bank. The mortgage, therefore, was not taken on that ground. But this is no affidavit. It is not subscribed, or sworn before a proper officer. It amounts only to a declaration; and if the president and cashier had both declared, at the time of the delivery of the mortgage, that it was executed and the seal affixed by order of the board, it would not have been sufficient, because this was an act not within the scope of their general authority, as president and cashier of the bank; and the corporation would not have been bound by it: 3 *Peters*, 305. There is, therefore, no evidence of any authority to execute the mortgage, or any confirmation of it; and affixing the seal to it, without authority, will not make it the act of the corporation: 12 *Mad.* 423; 2 *Ves. and B.* 226; 5 *John. C. R.* 364. Of this want of authority Leggett was aware, because, in the last interview between them, when Dayton expressed his doubts as to the power of the president and cashier to make the mortgage without the authority of the board, he answered, that if they would execute it he would take it. Nor can the complainants place themselves in the situation of bona fide purchasers without notice; as the Hoboken Bank have not had the benefit of the mortgage by way of loan; the object being merely to secure an old debt. The mortgage, too, was not duly proved to entitle it to registry: the proof was made not by the subscribing witnesses, in proper form, or before a proper officer. But if it is valid, we are entitled to a reference to ascertain the state of the accounts.

*I. H. Williamson*, in reply. The main question is, whether the mortgage is valid, as between the two banks: the receivers stand in no better situation than the banks they represent. I am surprized at the first position taken by the defendants' counsel; that the Hoboken Bank had no power to make the mortgage. Some powers are incident to every corporation, and especially corporations aggregate, without being expressed. Other powers may be considered as included in those expressly granted, or necessarily resulting from them. The bank is authorized by their char-

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

ter to purchase, hold and convey real estate. They are limited to such real estate as may be necessary for their accommodation in the transaction of their business, or such as may be acquired in a particular manner; but there is no restraint as to the disposition of it when lawfully acquired. It was lawful for them to purchase and hold the banking house. The power of alienation is incident to the power of purchasing and holding. It was therefore lawful for them to sell and convey their banking house. If they could sell and convey absolutely, why not mortgage it. A mortgage is a conveyance : it is an alienation ; and being made for the benefit of the bank, it is valid. The case in 2 *D. and E.* 171, is not applicable : that was a case of trustees, and not of a corporation.

In the second place, it is said we have not proved the due execution of the mortgage. If it was not duly proved at the time of recording, it is sufficiently proved now ; and if there has been no transfer, the mortgage is good nevertheless. It is not necessary to prove the signature of the president; it is sufficient to prove the common seal, and the affixing it to the instrument by the proper officer. Nor is it necessary to prove the prior assent of the corporation ; that is implied and proved by the corporate seal. The seal is the highest evidence of the act of the corporation. If the seal was improperly put to the instrument; if it was put by a stranger, this matter must be shown by the corporation. The *onus probandi* is on them. But when the seal is put by the proper officer, who acts under a general authority, it is conclusive evidence of the assent of the corporation, and they are bound : *Kyd on C.* 267–8. Otherwise a corporation keeping no minutes, might commit great frauds. Here the company kept no regular minutes. They had no book of minutes. The minutes of June, 1828, was on a slip of paper only, in the hand-writing of the president. How then is it proved that there was no order sanctioning the mortgage ? But an order was unnecessary. Affixing the seal by the head of the corporation is sufficient. A deed entered into by the Dean, will bind the Chapter : 2 *Atk. R.* 45. The case from *Ves. and B.* does not apply.

The directors who have been examined, all say, it was necessary for the bank to give the mortgage. Nothing was wanting

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

but mere form. The mortgage was for banking purposes. It went to the use of the bank: they obtained a large credit by it, and have had the benefit of it. They ought to have affirmed or disaffirmed the transaction. Under such circumstances, a court of equity would have decreed a mortgage to be given: *Kyd C.* 312, 316.

But it is said that Leggett knew the president and cashier were not authorized to execute the mortgage. He thought it immaterial whether the approbation of the directors was prior or subsequent to the execution, and from Dayton's letter he had a right to presume that it had been obtained. We pray a decree for the amount due on the mortgage.

THE CHANCELLOR. Out of the matters of defence, as above stated, two questions have been raised. The first is, whether the New-Jersey Manufacturing and Banking company had any authority to give a mortgage on their property.

Upon this part of the case, I apprehend there can be no room for serious doubt. The powers of a corporation are, strictly speaking, two-fold: those derived from express grant, and those that are incident, and necessarily appertain to it, whether expressed in the grant or not. The power to make bye-laws is incident, for a corporation must necessarily have laws to regulate its proceedings. Of the same character is the power to make and use a common seal; for the law anciently was, that a corporation could act and speak only by its common seal. The right to sue is also incident: 2 *Bac. Ab.* 15, *Corporations.* In more modern times it has been usual to embrace all these incidental powers and privileges in the act of incorporation; so that it may now be considered as a pretty general rule, that the powers of a corporation are regulated and defined by the act which gives it existence.

In the act incorporating the New-Jersey Manufacturing and Banking company, the company is declared capable in law of purchasing, holding and conveying any estate, real or personal, for the use of the corporation. This right is afterwards modified, so that the real estate which it may hold shall be no more than is necessary for its immediate accommodation in the transaction

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

of business, or such as it may have acquired by sale or otherwise for the purpose of securing any debt or debts due to the said corporation. All real estate thus held may be conveyed for the use of the corporation. The property embraced within the mortgage now in question, was the banking house and lot at Hoboken, where the bank was located according to the terms of the charter; and it was, in the words of the act, necessary for the immediate accommodation of the company in the transaction of their business. It was, then, lawfully held, and might be lawfully conveyed for the use of the corporation. A mortgage is a conveyance, or deed. It is an alienation of the estate, and there is no reason to doubt that this mortgage was made for the use of the corporation. Whether given in payment of a debt, or as security either direct or collateral, it is not important now to inquire. The question is, whether a mortgage could legally be given; and I think we need go no further than to the charter itself for a satisfactory answer.

The argument, that this company was incorporated for banking purposes, and that the legitimate objects of such a company are to discount paper, and deal in bills of exchange and promissory notes, and not in lands or real estate, is just. No bank should be allowed to speculate in real property. It is contrary to the spirit and design of such institutions, and is liable to abuse. It always results in injury, and sometimes in ruin. But the argument does not apply to this case. Here was no speculation in lands or houses. The property was necessary for the lawful purposes of the company, and held for those purposes. If the company saw fit to mortgage it, for their safety or the advancement of their interests, they acted within their authority, and having acted in good faith for the best interests of the institution, it is not for the receivers to come in and question the proceeding.

This view is an answer to the authorities cited by the counsel of the defendants on this branch of the case. They all go to the establishment of the principle, that corporations can act only in the manner prescribed by law, and that no argument drawn from convenience can enlarge their corporate powers. This doctrine is admitted in its fullest extent, and in this age of incorpo-

April, 1832.

Leggett et al.
v.
The N. J. Ma.
& Banking
Co. et al.

rations should be strictly adhered to.    I concur in the opinion of
the supreme court of the United States, as pronounced by justice
M'Lean, in the case of *Beatty* v. *the Lessee of Knowler*, 4
*Pet. R.* 168, that a corporation is strictly limited to the exercise
of the powers specifically conferred on it; and that the exercise
of the corporate franchise, being restrictive of individual rights,
cannot be extended beyond the letter and spirit of the act of in-
corporation.

Considering that the banking company had power to make
this mortgage, I proceed to inquire, in the next place, in what
way it was executed, and whether the company are bound by
it.    It appears by the testimony, that the mortgage was signed
by the president and cashier of the New-Jersey Manufacturing
and Banking company, and that it was sealed with the corpo-
rate seal.    This is, prima facie, a due and lawful execution of
the instrument.    The appearance of the common seal of a cor-
poration to an instrument, is evidence that it was affixed by pro-
per authority : *Skin. Rep.* 2; 1 *Kyd*, 268; *The President,
Managers and Co. of the Berks and Dauphin Turnpike
road* v. *Meyer*, 6 *Serg. and Rawl.* 12; *The Baptist Church*
v. *Mulford*, 3 *Halst.* 183; *Angell and Ames on Corpora-
tions*, 115.

But while the common seal is held to be evidence of the assent
and act of the corporation, it is not conclusive.    It may, never-
theless, be shown that it was affixed without proper authority.
The matter is susceptible of investigation.    The burden of proof
is thrown upon the objecting party ; and he will be required to
produce such evidence as shall be clear and satisfactory : *Mayor
and Commonalty of Colchester* v. *Lowton*, 1 *Ves. and B.* 226.
And in the case of *St. Mary's Church*, 7 *S. and Rawl.* 530,
chief justice Tilghman considers, that the court has an undoubt-
ed right to look beyond the seal, and inquire in what manner,
and by what authority, it was affixed.    After supposing a num-
ber of cases in which great injury might arise from the adoption
of a contrary principle, he adds, that in all these cases, it is too
clear to admit of argument, that the court would do flagrant in-
justice, if it suffered the seal to preclude an examination of the
truth.

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

In the case before us, it is alleged by the defendants, that the seal was affixed without authority, by the president and cashier. Believing this to be a matter that may properly be set up by these defendants, I propose to inquire in what way, by whom, and under what authority, the corporate seal was affixed. And for this purpose it will be necessary to look into the facts of the case.

The former president and cashier, and some of the former directors of the bank, have been examined as witnesses. They give a lamentable account of the mode in which things were managed in the institution. There was a board of directors appointed annually; but they paid little or no attention to the concerns of the bank. Some of them did not know of their appointment. They had no stated times of meeting for consultation or inquiry; and when they did meet, there was no record kept of their proceedings. For a time, the whole management of affairs was committed to the president and cashier; and the president says, the principal business was done by the cashier; in cases of difficulty, the president was consulted. In 1827, the board met twice. At one of these meetings they appointed a finance committee. This committee was in existence when the bond and mortgage were given. The bond and mortgage were signed, and the corporate seal affixed, by the president and cashier, without the concurrence of the board of directors. There was no assembling of the board for that purpose, and the question was never submitted to them. The company kept their accounts in New-York with the Franklin Bank. In the latter part of 1827, and the beginning of 1828, they were found to be considerably indebted to that bank, and were pressed by Mr. Leggett, the president, to give a mortgage. In January, 1828, he had an interview with Mr. Dayton, and renewed the request. Mr. Dayton expressed a perfect willingness to secure the Franklin Bank, but at the same time suggested a doubt whether a bond and mortgage given without the previous authority of the board, would be valid. An attempt was made to get a meeting of the directors, and it failed. At length, on the 19th of the month, the bond and mortgage were executed by the president and cashier, and the corporate seal affixed; after which the pa-

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

pers were delivered to Mr. Leggett, for the use of the Franklin Bank. This is a brief history of the principal facts connected with the transaction.

By the act incorporating the New-Jersey Manufacturing and Banking company, it is provided, that all the affairs, property and concerns of the corporation, shall be managed and conducted by eleven directors, who shall be elected annually ; and that the directors for the time being, or a majority of them, shall have power to make and prescribe such bye-laws, rules and regulations, as to them shall appear needful and proper, touching the government of the said corporation, the management and disposition of the stock, business and effects thereof, and all such other matters as may appertain to the concerns of said corporation.

From this it appears that the general power over the affairs of the corporation, was committed to the board of directors, to be chosen by the stockholders. If the mortgage had been executed under the authority of that board, it would, in the judgment of this court, have been valid. But the evidence shows it was not so executed. The board took no order or vote upon the subject ; they have not consented, and many of them knew nothing of the transaction. If, then, the mortgage and bond could not legally be executed without the direct assent or order of the board, they cannot be valid instruments, even against the corporation, for such assent or order was never directly given.

But it is said that the seals were affixed to these instruments by the president and cashier, the openly acknowledged agents of the company ; and if they have abused their trust, third persons ought not suffer by their misconduct.

This leads to the important inquiry, how far these incorporated companies are bound by the acts of their agents. Upon this subject, it was earnestly contended on the part of the complainants, that in this instance, the president and cashier being recognized as the agents and servants of the corporation, and being intrusted with the care of the corporate seal, their acts should bind the corporation, provided they were such acts as the corporation itself might lawfully do, or order to be done : that within this limit, strangers or third persons are not bound to inquire whether the mode of doing the acts was according to the internal

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

regulations of the company or not. There is much plausibility in the argument; and, considering that incorporations are fast spreading over the land, and mingling themselves with all the ordinary concerns of life, it may afford matter for profitable inquiry to those whose province it is to create these impersonal and artificial bodies. But the rule of law appears to be settled on this subject, and it is not for me to alter it. It is this; that corporations, like natural persons, are bound only by the acts and contracts of their agents, done and made within the scope of their authority: *Clark* v. *Corporation of Washington*, 12 *Wheat.* 40; *Bank of the U. S.* v. *Dandridge*, 12 *Wheat.* 64; *Essex Turnpike Corp.* v. *Collins*, 8 *Mass. Rep.* 299; *Angell and Ames on Corp.* 170. Thus, if a restricted authority is given to a special agent, a contract made by him without its limits, will impose no obligation on his constituent. Where one was appointed the agent of a turnpike corporation, to contract for making a certain portion of the road, with the restriction that one third of the payment on such contracts was to be made in shares in the road, it was held that a contract made by him without this stipulation would not bind the corporation: *Hayden and al.* v. *The Middlesex Turnpike Corporation*, 10 *Mass. Rep.* 403.

Taking this as the true principle, it is incumbent on the defendants to satisfy the court that the president and cashier acted beyond their authority.

They acted either as general or special agents; or in other words, either in virtue of their general power, *ex officio*, or of some special authority. If in virtue of their general power as officers of the bank, they exceeded it, in undertaking to convey the real property of the corporation. The cashier is usually intrusted with all the funds of a bank, in cash, notes, bills, &c., to be used from time to time for the purposes of the bank. He receives directly, or through the subordinate officers, all monies and notes. He draws checks, from time to time, for monies, wherever the bank has deposits. In short, he is the executive officer through whom, and by whom, the whole monied operations of the bank, in paying or receiving debts, or discharging or transferring securities, are to be conducted: *Fleckner* v. *U. S.*

70

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

*Bank*, 8 *Wheat.* 360, 361 ; 12 *Ser. and Rawl.* 265. It is, perhaps, more difficult to define with precision the powers of the president of a bank ; but I believe it may be said with safety, that they are not so important as those of the cashier. He is the president of the board of directors, but as such does not possess the powers of the board. He is a member of the board, and in the absence of that body is intrusted with the general supervision of the concerns of the bank.

I think it quite clear, that the president and cashier, as such, had no power to execute, in the name and in behalf of the corporation, the instruments in question. Their authority, although extensive, has limits. It may extend to all the ordinary, and even extraordinary financial operations of the company ; but it can, by no presumption, be taken to include the right to execute a conveyance of real estate. This is a transaction of rare occurrence. It is not within the range of banking operations. It is the most solemn act that the corporation can perform ; and it would be dangerous to the community, and to corporations themselves, if the president and cashier, the ordinary officers of the corporation, could exercise a right of this character, in virtue of the general powers of their office. Admitting that, in this instance, in consequence of the neglect or inattention of the board of directors, the duties of the officers were enlarged, and greater powers were committed to them, not expressly, but permissively, they would not be authorized to do an act of this kind. If they were even *general agents* for this corporation, without limit from common usage, or the prescribed by-laws of the company, they would not have been authorized to sell and convey the real estate of the company without express authority : *Stow* v. *Wyse*, 7 *Conn. Rep.* 219.

If, then, these officers had no authority, *ex officio*, to make the mortgage, had they any special authority ? On this point, also, the defendants are bound to satisfy the court, at least so far as to overcome the presumption of law that now rests against them. The only legitimate source whence this authority could emanate, was the board of directors. It is manifest none had been derived from that source. There had been no meeting for that purpose. The matter had never been submitted to them.

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

The testimony of Mr. Dayton places this beyond a doubt. In his letter to Mr. Leggett of the 12th of January, 1828, he says, " Upon further reflection, we (meaning the cashier and himself) are decidedly of opinion that the previous authority of the board of directors should be obtained for carrying into effect so important an operation." Prior to that date, then, there was no authority from the board ; and the same witness testifies that there was none afterwards, and before the execution of the mortgage. This appears to be conclusive upon this part of the case.

It was, however, contended by the counsel of complainant, that there was a finance committee appointed by a lawful meeting of the board ; and that the giving of the mortgage was approved by them, or a majority of them, acting in behalf of the board. Without giving any opinion on the nature and extent of the powers that might lawfully be given to such a committee, I shall inquire into those that were actually given or intended to be given, and how far they were exerted in the transaction of this business.

Aaron Peck says, the committee of finance was appointed by a legal board, and had " a general authority in collecting, and providing ways and means, and regulating financial operations ; they had also the power of discounting." Cyrus Jones testifies, that he was present when the finance committee was appointed. They were appointed to get the debts due from Barton and others settled up : they were to have the general care of the funds, and the power of discounting at Hoboken. In another part of his examination he says, great powers were given to the committee. Whether the power thus given, according to the recollection of either or both these witnesses, would warrant the committee in giving a mortgage on the banking property, was considered doubtful. Peck, who was one of the committee, thinks it would not. His idea is, that the committee would have had the right to make the contract, but that it should have been sanctioned by the board ; and that they were not legally competent to mortgage the bank, without the approbation of the directors.

The powers of this committee were purely financial. They had authority to discount, and to provide ways and means to car-

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

ry on the ordinary operations of the bank; but they had no right, as I conceive, to mortgage the real property. But let us look a little further, and see who composed this committee, and whether the giving of the mortgage was actually sanctioned by them. Peck says that the president and himself were two, and he thinks that John H. Hill, the cashier of the Franklin Bank, was the third; but of this he is not positive. He states further, as his impression, that he and Mr. Dayton approved of them; but states nothing about any consultation with Hill. Mr. Dayton, in his testimony, makes no mention of this finance committee.

How, then, stands the case on this point. The appointment of the committee is proved. Who composed the committee is a matter of some doubt; whether a majority of the committee approved of the mortgage is also doubtful; and there is no evidence of any consultation with Hill, if he was in truth a member. To all these matters of difficulty is to be added, the more serious one, that the powers of the committee were insufficient to authorize the proceeding.

The defendants have, then, shown satisfactorily, that the president and cashier of the New-Jersey Manufacturing and Banking company, were not authorized by any previous vote or order of the board to affix the corporate seal to those instruments; that they had no authority to do it in virtue of their offices, or of the direction or approbation of any other lawfully authorized agents of the board. From all which, I am drawn to the conclusion that the bond and mortgage were not lawfully or properly executed by those officers. In coming to this conclusion, I wish to be understood in a legal sense, and not as impeaching the morality of the transaction. There is every reason to believe the mortgage was given in good faith.

If the view taken of this case be correct, the bond and mortgage were not, at the time of their execution, available as against the corporation. Still, they were not void in themselves. A corporation may approve of the unauthorized acts of its agents, and make them their own. This may be done directly or indirectly. It may be shown by express acknowledgment or act, or it may be inferred from circumstances. " By the whole course of decisions in this country, corporations, in their contracts, are

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

placed upon the same footing with natural persons, open to the same implications, and receiving the benefit of the same presumptions :" *Angell and Ames*, 132; *Bank of Columbia* v. *Patterson*, 7 *Cranch*, 306; *Randall* v. *Van Veghten and al.* 19 *John.* 65; *Bank of Alexandria* v. *Seton*, 1 *Pet.* 299.

It remains, then, to inquire, whether the New-Jersey Manufacturing and Banking company, acting through their lawfully authorized agents in that behalf, did in any manner or way ratify or sanction this act of the president and cashier.

Upon this subject there is but little evidence. There was no meeting of the board until June, 1828; at which time the Franklin Bank had closed its doors, and its effects were in the hands of a receiver. There is a written minute of the proceedings of that meeting, in the hand-writing of the president. It contains nothing in relation to this bond and mortgage. There was no act done at that meeting, so far as can be ascertained, which can be construed into a ratification. There were present, originally, A. O. Dayton, Paul Tucker, Aaron Peck, Joseph A. Halsey, Abraham Winans, and Cyrus Jones. Three new directors were afterwards chosen to fill vacancies, and took their seats; but there is nothing in the evidence to lead to the belief that the subject of the bond and mortgage was brought before the board, or that it came in any way under their notice, or was even made the subject matter of conversation. On the contrary, Cyrus Jones, who was present at the meeting, expressly says, that he never heard of the bond and mortgage until within a year from the time of his examination, which was in September, 1831. And Joseph A. Halsey, who was also present, says, he never heard of them until he heard of the controversy about them. It is evident, then, that the instruments were not confirmed at that meeting. The board consisted of thirteen members. A majority of those who constituted the board in 1827–8, have been examined, and no one of them proves any act of confirmation by the board. Four of them testify that they never heard of the bond and mortgage until a long time after they were given.

There are instances where a board of directors may bind themselves, or accept of a contract, by a tacit and implied assent:

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

12 *Wheat*. 83, *Bank U. S.* v. *Dandridge*. These cases rest upon the obvious principle, that the law will not sanction the fraud of a corporation, sooner than that of an individual. There must be something that will amount to legal fraud. Is there any thing of that character shown in this case? What approaches nearest to it, perhaps, is the fact disclosed by the testimony of Aaron Peck, that he conversed with different directors at different times, and the giving of the bond and mortgage was approved of generally. This brings home a knowledge of the fact to some of the directors; but to whom, or how many, is not shown. The time when, whether before or after the meeting of June, 1828, is uncertain. Whether the information was communicated to a majority of the board, is not ascertained. If the fact was known to some of the individual members of the board, and not disclosed to the board itself, shall it be taken as the implied assent of the board, so as to fix upon the corporation the charge of fraud, and on that ground bind them to an unauthorized contract? And if it be true, as is alleged, that the bank, by giving these securities, obtained a large credit with the Franklin Bank, is it shown that this fact was in any wise known to the directors? There is no kind of evidence of it, nor is there any thing, so far as I can discover, from which such knowledge can be fairly inferred.

According to my opinion, then, there is no evidence of any subsequent ratification or assent, either express or implied.

It is said, however, that the corporation, by means of the mortgage and bond, came into possession of considerable funds which were appropriated to their use, and that they are bound in equity by the contract on that ground. If I understand the way in which the business was transacted, it was this:—In January, 1828, the New-Jersey Manufacturing and Banking company were largely indebted to the Franklin Bank; and, upon giving these securities, the Franklin Bank gave them a credit on the account for so much money paid; in consequence of which they were enabled to obtain further loans from the Franklin Bank. The securities were intended to operate as a payment. There was no money borrowed on the faith of them directly. Some of the old authorities seem to favor the position of

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

the counsel on this point. Thus it is said, in an ancient case, that if the head of a corporation, by the intervention of a servant, buy certain things for the use of the corporation, which are actually applied to their use, they are bound by this contract; and an action may be maintained against them, after the change of the head, in whose time the purchase was made. So, if one who is the regular servant of the corporation, make a purchase, and apply it to the use of the corporation, it would seem that the corporation is bound: but in both these cases the plaintiff must aver that the things purchased came to the use of the corporation: *Long* 5to. *E.* 4, 70, 71; 1 *Kyd*, 314. And in *Wood's Civil Law*, it is laid down from the Digest, that corporations may borrow money by their syndick; but if he borrows more than he had authority for, the community is not answerable for it unless the money came to their use: *Wood's Civil Law*, 135; *Dig.* 12, 1, 27. When these cases are examined, they do not sustain the complainant. They do not go on the ground that the unauthorized contract of the agent binds the principal, but rest on the plain equity resulting from the use and enjoyment of the property. That equity applied to the present case, would not establish the securities now in question. It might, I do not mean to say it would, give the Franklin Bank the right to demand, in the character of ordinary creditors, the amount of the debt intended to be paid or secured by the mortgage. The security may be void, and yet the debt recoverable. See *Utica Insurance Co.* v. *Scott*, 19 *John.* 1. This question is not raised by the pleadings in this cause, and I give no opinion upon it.

The result of the whole case is, that those securities are invalid instruments, and cannot be enforced in this court against the defendants.

Much was said in the argument about the hardship of a decree declaring this bond and mortgage invalid, and about the innocence of Leggett. There is no room for complaint on the ground of severity. The transaction was, to say the least of it, incautious and unadvised; and if persons will deal in matters of the most solemn character, with agents who undertake to act out of the scope of their ordinary and acknowledged powers, they

April, 1832.

Leggett et al.
v.
The N.J. Ma.
& Banking
Co. et al.

must abide the consequences. Then, as to the innocence of Mr. Leggett: he believed, as he says in his examination, that the assent of the board to the giving of the mortgage had been obtained. I am bound to give credit to his testimony. I may, however, be permitted to say, that he founded his belief upon supposition rather than fact, and that he took no means to ascertain whether it was right or wrong. Mr. Dayton had previously expressed his opinion to Mr. Leggett, that the president and cashier had no authority to make the mortgage. Mr. L. differed in opinion, and signified his willingness to take it without the order of the board. Mr. Dayton said he would convene the board. Whether that had been done, and whether the board had made the order, were matters about which Mr. Leggett could have satisfied himself by a single question. He neglected or omitted to ask the question, and betrayed throughout an unusual anxiety to have the business completed. He does not allege that he was deceived by the affidavit of Munn, the cashier, on the back of the mortgage; nor could he have been, for that appears not to have been made till afterwards. If Mr. Leggett was innocent, he was certainly neither careful nor prudent in the transaction; and I cannot consider him as standing in a situation that entitles him, or the bank, to the favorable consideration of the court.

Let the bill be dismissed.