Prall *v.* Tilt.

---

William Prall and others, appellants,

and

Benjamin B. Tilt and Albert Tilt, respondents.

1. A person holding stock in a fiduciary capacity has, *prima facie*, no right to pledge it to secure a debt growing out of an independent transaction unconnected with the trust; and whoever takes it as security for such a debt, does so at his own peril.

2. A certificate of stock accompanied by an irrevocable power of attorney, either filled up or in blank, is, in the hands of a third party, presumptive evidence of ownership in the holder. And where the party in whose hands the certificate is found is a holder for value, without notice of any intervening equity, his title cannot be impeached. The holder of the certificate may fill up the letter of attorney, execute the power, and thus obtain the legal title to the stock. And such a power is not limited to the person to whom it was first delivered, but enures to each *bona fide* holder into whose hands the certificate and power may pass.

3. Mere knowledge on the part of a purchaser that an executor or administrator is dealing with the assets in a fiduciary capacity, is not enough to raise suspicion or to put the party on inquiry, for the reason that it is their primary duty to dispose of the assets and settle the estate. A sale and transfer by them is ordinarily in the line of their duty. The common duty of a trustee is not administration or sale, but custody and management for his *cestuis que trust*.

On appeal from a decree of the chancellor, reported in 12 *C. E. Gr.* 393.

*Mr. Hoxsey*, for appellants.

*Mr. C. Parker*, for respondents.

GREEN, J.

The bill in this cause was filed by two of the residuary legatees under the will of Edwin T. Prall, deceased, to recover from the defendants, Benjamin B. Tilt and Albert Tilt, five hundred and fifty-eight shares of the capital stock of the Phœnix Manufacturing Company, alleged to have been illegally transferred to them by the executrix of Edwin T. Prall, as collateral security for debts of her sons, Mortimer and Edwin Prall, who are also legatees under said will. Rachel M. Prall, the executrix, and Mortimer Prall and Edwin Prall are made defendants in the bill of complaint, but have not appeared or defended the suit. The whole controversy is between the complainants, who are the

appellants in this court, and Benjamin B. and Albert Tilt, the present holders of the stock.

The principles of equity invoked by the complainants in support of their case, are too familiar and well settled for discussion, and are not disputed or questioned by the counsel of the defendants. A person holding stock in a fiduciary capacity has, *prima facie*, no right to pledge it to secure a debt growing out of an independent transaction unconnected with the trust; and whoever takes it as security for such a debt, does so at his own peril. *Elliott* v. *Merriman*, 1 *Lead. Cases in Eq.* 110; *Landon* v. *National City Bank*, 8 *Blatch.* 430; *Shaw* v. *Spencer*, 100 *Mass.* 382.

There is no doubt but that the stock in question belonged to the estate of Edwin T. Prall, and that his executrix permitted and authorized her sons to use it for their own private ends, to secure their individual debts, in breach of the duty imposed upon her to administer the assets for the benefit of the estate and those whose interests she represented. This, though done without fraudulent intent or evil design, constitutes a legal or constructive fraud, for which both the executrix and Edwin and Mortimer Prall, for whose benefit and with whose concurrence the illegal act was committed, are responsible and might be held liable in equity.

But the respondents occupy a different position. They claim to be *bona fide* purchasers of the stock for valuable consideration. And the only question in the cause, is whether they are chargeable with actual or constructive notice of the misapplication of the assets of the estate by the executrix, or whether any sufficient ground appears to charge them with *mala fides* in the transaction, or to put them on inquiry.

There is no allegation in the pleadings or evidence, of any actual or intentional fraud on the part of any one concerned in the transaction. The bill merely charges that all the defendants knew that the stock was part of the assets of the estate of Edwin T. Prall, deceased, and not the individual property of Rachel M. Prall, to be transferred or pledged as security for the debts of Mortimer and Edwin Prall, and

alleges that such transfer was a disposition of the assets of the estate unauthorized by the will of the testator, and in contravention of law and of the rights of the complainants. The Pralls certainly had full knowledge of the facts, but to render the respondents liable, the knowledge must be brought home to them, or it must appear that the circumstances attending the transaction were such as to put them on inquiry as to the facts. By their answer, under oath, the respondents deny the allegation of the bill charging them with knowledge, and allege that all their transactions in the premises were *bona fide*, and without notice or suspicion in anywise that Mortimer and Edwin Prall were not the *bona fide* holders and owners of the stock.

It appears by the evidence, that in the month of February, 1874, Mortimer and Edwin Prall, then partners under the name of Prall Brothers, being in need of additional capital or more extended credit in their business, applied to Albert Tilt, the active partner in the firm of B. B. Tilt & Son, to purchase the stock in question, or to give them a line of credit with the stock pledged as collateral security. Tilt declined to buy the stock, but offered to take it as collateral security for goods to be sold by his firm to Prall Brothers, and to give the latter a line of credit accordingly. This negotiation was principally, if not exclusively, between Albert Tilt and Edwin Prall, representing their respective firms, and the certificates for the stock were delivered or sent by the latter to Tilt. The Pralls, at Albert Tilt's request, afterwards reduced their application to writing, and under date of February 26th, sent them the following communication :

"Messrs. B. B. Tilt & Son: We hereby offer to transfer to you 558 shares of the Phœnix Manf. Co., Paterson, N. J., as collateral security for credit to the amount of $14,000, on all bills of goods purchased by us from you to the above amount. Also, to give our promissory notes at four months' time from the average date of said bills. If accepted, please send us receipt of stock, and open our credit to the amount mentioned above."

Prall *v.* Tilt.

By a letter addressed to Prall Brothers, under date of March 3d, B. B. Tilt & Son accepted the offer of February 26th, and acknowledged the receipt of the stock.

In conformity with this arrangement, and on the faith of the collateral, the credit was opened and large amounts of goods from time to time sold to the Pralls, and, upon the close of their dealings, there remained due to B. B. Tilt & Son a balance of over $9,000, which is still unpaid.

The Tilts undoubtedly knew that the stock had belonged to the testator in his lifetime, and that at the time of the negotiation it still stood in his name on the books of the company, as appeared by the certificates. The stock, with a blank power of attorney for its transfer, duly executed by Rachel M. Prall as executrix, was delivered by Edwin Prall to the Tilts, or sent to the office of the company for them. The power of attorney was filled up by the secretary of the company, and by virtue thereof the stock was transferred on the company's books to B. B. Tilt & Son, by Benjamin B. Tilt, prior to the date of their written acceptance of the Pralls' offer. These are all the material circumstances accompanying the transaction tending to put the Tilts upon inquiry as to the true ownership of the stock at the time, or as to the alleged misappropriation of the assets by the executrix, and they are clearly insufficient either to charge them with *mala fides* or to put them on inquiry.

By commercial usage as universally acknowledged by the business community as the law of negotiable paper, and sanctioned by repeated adjudications in our courts as well as in those of other states, a certificate of stock accompanied by an irrevocable power of attorney, either filled up or in blank, is, in the hands of a third party, presumptive evidence of ownership in the holder. And where the party in whose hands the certificate is found is a holder for value, without notice of any intervening equity, his title cannot be impeached. The holder of the certificate may fill up the letter of attorney, execute the power, and thus obtain the legal title to the stock. And such a power is not limited to

the person to whom it was first delivered, but enures to each *bona fide* holder into whose hands the certificate and power may pass. *Broadway Bank* v. *McElrath,* 2 *Beas.* 26 ; *Hunterdon County Bank* v. *Nassau Bank,* 2 *C. E. Gr.* 496 ; *Mount Holly Turnpike Co.* v. *Ferre,* 2 *C. E. Gr.* 117.

Under these well-recognized principles large amounts of property daily pass from hand to hand; are sold and resold, or hypothecated for loans without an actual transfer on the books of the corporation, and without other evidence of ownership than the possession by the holder of the certificate and power of attorney.

The fact that the legal title to the stock, was known to have previously been in the executrix, and that the title of the holder appeared upon its face to have been derived from her in her representative capacity, does not affect the application of the principle or create any conflict with the well-considered cases of *Landon* v. *The National City Bank* and *Shaw* v. *Spencer,* cited by the counsel of the appellants. Mere knowledge on the part of a purchaser that an executor or administrator is dealing with the assets in a fiduciary capacity, is not enough to raise suspicion or to put the party on inquiry, for the reason that it is their primary duty to dispose of the assets and settle the estate. A sale and transfer by them is ordinarily in the line of their duty. The common duty of a trustee is not administration or sale, but custody and management for his *cestuis que trust.* 1 *Perry on Trusts,* § 225 ; *Bayard* v. *Farmers and Mechanics Bank,* 52 *Pa. St.* 232. The distinction is recognized and commented upon in *Landon* v. *N. City Bank,* above cited.

There is another material distinction between the case under consideration and those referred to on the argument. In most, if not all, of the cases cited, the loan was negotiated directly by the trustee himself for his own benefit, and the certificates showed upon their face that the stock was held by him in trust for another. Here the respondents were dealing, not with the executrix, but with a third party acting for themselves, holding the certificates of stock, offering them

Prall *v.* Tilt.

for sale, not only to the respondents, but to others; and dealing with them as their own property, by virtue of a title valid upon its face, although derived from the executrix.

This view of the case renders it unnecessary to discuss the conflicting testimony of Edwin Prall and Albert Tilt, as to the representations made by the former during the negotiation, or to consider the effect of the provisions of the will of Edwin M. Prall, if the respondents were held to be put upon inquiry as to its contents. These questions are fully discussed by the chancellor in his opinion, and I see no reason to dissent from the result reached by him.

The decree of the chancellor should be affirmed, with costs, and the record remitted to the court of chancery, to be proceeded with according to the rules and practice of that court.

For affirmance—BEASLEY, C. J., DEPUE, REED, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, GREEN—8.

For reversal—DALRIMPLE, DIXON, KNAPP, LILLY—4.