Livermore *v.* McNair.

EDWIN R. LIVERMORE and RAYMOND B. LIVERMORE

*v.*

THOMAS McNAIR et al.

1. A debtor possesses the right, even when in insolvent circumstances, of giving one or more of his creditors preference over the others; but it must always be exercised for honest ends and according to legal methods.

2. The law will not permit a thing to be done by indirect means which it is not lawful to do by direct means.

3. Equity cares very little about mere matters of form : it endeavors to deal with the substance of affairs, and to regulate its judgment according to the real purposes which have controlled parties in the matters brought before it for relief or correction.

4. A creditor has a right to have his debtor's property applied to the discharge of his debts by due course of law, and any disposition which the debtor may attempt to make that has the effect to defeat this right, is a fraud against the creditor.

5. A executed a mortgage to three of his creditors, to secure notes made to them and some other of his creditors, payable in installments, in one, two, three, four and five years. A also confessed judgment to one of his creditors, under which his personal property was sold, and bought by one of his said three creditors, and transferred by him to the wife of A, upon her executing a chattel mortgage for the full amount of the purchase-money. The object of the mortgage and judgment, as stated by A, was to prevent the sale of his property, so that he might, from its advance in value and the profits of his business, be able to pay all his creditors in full.—*Held*, that the mortgage and judgment were in contravention of both the statute regulating assignments and the statute of frauds.

On final hearing on bill and answer, and proofs taken in open court.

*Mr. Joseph Coult*, for complainants.

*Mr. John W. Taylor*, for defendants.

Livermore *v.* McNair.

VAN FLEET, V. C.

This is a creditor's suit. The complainants seek to impeach a transaction which they allege is, in all its material features, identical with that pronounced invalid by the supreme court in *Owen* v. *Arvis, 2 Dutch. 22.* It is needless to remark that, if they show this to be the fact, they will establish a good right to relief.

The following narrative presents all the material facts of the case: Thomas McNair, a baker of the city of Newark, became financially embarrassed in the winter of 1879. A meeting of his creditors was held, February 25th, 1879, when it was found that his debts amounted to about $20,000, and that his assets were not sufficient to enable him to pay more than twenty-five cents on the dollar. The complainants offered to take his assets and pay his other creditors twenty or twenty-five cents on the dollar, but their offer was declined. Their claim represented nearly one-half of McNair's whole indebtedness, its amount being a little over $8,500. The creditors separated without consenting to a compromise or agreeing on any plan of action. Mr. McNair's assets, at this time, were worth between $5,000 and $7,000. On the 25th of March, 1879, Mr. McNair, together with his wife, executed a mortgage on all his real estate to three of his creditors, securing promissory notes made to all his creditors except the complainants and one other, whose claim amounted to a little over $4,600. These notes provided for the payment of the debts they evidenced as follows: One-tenth at the end of one year, and the like proportion respectively at the end of the second, third and fourth years, and the balance at the end of the fifth year. The aggregate debt thus secured is a trifle over $5,900.

On the 29th day of March, 1879, Mr. McNair confessed a judgment to Martin Burne & Co. The debt on which this judgment was founded is one of those secured by the mortgage just mentioned, the payment of which had been extended from one to five years. Mr. McNair's personal property was sold under this judgment, on the 29th day of April, 1879, and purchased by Martin Burne for $812. Mr. Burne is one of the three persons

to whom the mortgage on the real estate was given. The next
day after the sheriff's sale (April 30th), Mr. Burne transferred
the personal property to the wife of Mr. McNair, for the same
price he had bid it off at, and took a chattel mortgage from her
on the same goods for the whole amount of the purchase-money,
payable in one year. Mrs. McNair had no separate estate, and
possessed neither credit nor the least business knowledge or expe-
rience. The judgment and sale under it were not used for the
purpose of collecting or satisfying the debt of Martin Burne &
Co., but merely to place Mr. McNair's personal property in
such a position that the creditors whose debts were secured by
the mortgage on the real estate, might have the benefit of it as
an additional security. Martin Burne admits, in his testimony,
that it was understood that the proceeds of the sale of the per-
sonal property were not to be credited on his judgment, but
were to be distributed among the creditors whose claims were
secured by the mortgage on the real estate.

The transfer of the personal property to Mrs. McNair was
made pursuant to an arrangement made by Mr. McNair with
his creditors, and not in execution of a contract of purchase.
This is shown both by the evidence of Mrs. McNair and Mr.
Burne. Mrs. McNair says she never had any negotiation with
Mr. Burne respecting the price to be paid for the personal prop-
erty, nor any talk upon that subject; and Mr. Burne says it
was understood among the creditors, before the real estate mort-
gage was executed, that some arrangement should be made by
which Mr. McNair should be permitted to carry on his business
after the mortgage was given. Mr. McNair says his object in
giving the mortgage was to prevent the sale of his property, and
to retain it in his own hands, so that he might, from its advance
in value and the profits of his business, be able to pay all his
creditors in full. He further says that he repeatedly avowed
this purpose to his creditors and others. He is uncontradicted
on this point. After this arrangement was perfected, the bakery
business was carried on in the name of Mrs. McNair, but Mr.
McNair managed and controlled it almost as absolutely as he

had before.   The transfers by mortgage and sheriff's sale embraced, substantially, Mr. McNair's whole estate.

Stripped of all gloss, and stated according to the obvious purpose of the parties, the transaction brought under review is, in reality, this :   A transfer by a debtor of all his estate to three trustees, upon terms which permit him to hold all his property for a period of five years, and to manage and control it as he sees fit, on condition that he shall pay certain of his creditors whom he desires to prefer, one-tenth of their respective claims at the end of each year, for four years, and the balance at the end of the fifth.   In my judgment, this transaction can only be successfully defended on the ground that it is a legitimate exercise of the right which every debtor possesses, even when in insolvent circumstances, of giving one or more of his creditors preference over the others.   That a debtor possesses this right, cannot be questioned ;   it flows necessarily from the complete dominion which the law gives every man over his own property. But it is subject to important limitations ; it must always be exercised for honest ends and according to legal methods.   Both the end and method are challenged in this case.

It is contended that the transaction, when viewed in its substance and practical effect, is an assignment of all the debtor's estate in trust, for the benefit of certain preferred creditors, to the exclusion of all others.   If this contention is correct, there can be no doubt that the transaction must be adjudged invalid as to the complainants, for the statute regulating such assignments expressly declares that every conveyance or assignment made by a debtor of his estate, real or personal, or both, in trust to an assignee, for the creditors of such debtor, shall be made for their equal benefit, in proportion to their several demands, *   *   *   *   *   and all preferences of one creditor over another   *   *   *   *   *   shall be deemed fraudulent and void. *Rev. 36.*

The affair that this statute was intended to regulate is marked by two distinctive features : the transfer must embrace substantially the debtor's whole estate, and a trust for his creditors must be created.   *Tillou* v. *Britton, 4 Hal. 120 ; Fairchild* v. *Hunt,*

*1 McCart. 367.* Both these features appear in the transaction under consideration. They appear much more distinctly here than they did in the transaction brought under review in Owen *v.* Arvis. There, no *trust in favor of* creditors appeared at all on the face of the papers, but it was insisted, in defending the transaction, that, though no trust appeared, the real object of the conveyance by the father to his son, was to raise the means with which the father might pay his creditors. Chief-Justice Green, in speaking of this feature of the case, says, though the papers were not in form a conveyance by a debtor to an assignee in trust for his creditors, and therefore not within the terms of the act, yet they were so in substance, and therefore they contravened the policy of the statute regulating assignments, and were within the spirit of its prohibition against preferences. The fact that the assignment was effected by means of a mortgage and a judgment, will not legalize it, if it was made for a purpose which contravenes the statute. The law will not permit a thing to be done by indirect means which it is not lawful to do by direct means. Chancellor Green stated, in *Fairchild* v. *Hunt, 1 McCart. 373,* that, in his opinion, it would be very difficult to maintain the validity of a mortgage which was executed to subserve the purposes of an assignment, in which preferences, contrary to the policy of the statute, were attempted to be created.

Equity cares very little about mere matters of form; it endeavors to deal with the substance of affairs, and to regulate its judgment according to the real purposes which have controlled parties in the various matters brought before it for relief or correction. Now, I think it cannot be doubted for one moment that, if these parties had adopted the simplest course of procedure for the accomplishment of their purpose in this matter, its illegality would at once have been made so conspicuous, that no attempt would have been made to carry it into effect. To have done so, they would have had the debtor assign all his estate to three persons upon the following trusts : that he should be permitted to retain possession and control of the property, and have all the benefit arising therefrom, for the period of five

Livermore v. McNair.

years; provided, at the end of each of the first four years, he should pay the one-tenth of his indebtedness to certain of his creditors, whom he desired to prefer, to the exclusion of all others, and the balance at the end of the fifth year; and that, in case he failed to make any of the stipulated payments, the trustees should be authorized to convert the subject of the trust into money, and distribute the same ratably among his preferred creditors. Had this course been adopted, the written memorial of their purposes would then have expressed, in plain language, just what the evidence clearly shows the parties meant.

The sale of the personal property under the judgment, and its subsequent transfer to Mrs. McNair, and the execution by her of a mortgage for the price of the property, payable at the end of a year, would seem, in their outward appearance, to give evidence of a different purpose, but such appearance is manifestly delusive. The judgment was founded on a debt not then due; no part of it could become due for nearly a year, and the payment of six-tenths of it had just been extended five years. The sale under the judgment was not real, but deceptive. It was not made for the purpose of satisfying the judgment, but for the purpose of placing the debtor's property beyond the reach of certain of his creditors, so that he and his preferred creditors might enjoy it without molestation.

The plain design of the arrangement was to place the debtor's property beyond the reach of legal process, so that he might still practically own and control it for the benefit of himself and certain of his creditors, and bid defiance to his other creditors. Such a design is vicious in the eye of the law. It contravenes not only the policy of the statute regulating assignments, but the plain direction of the statute of frauds. Any arrangement a debtor may make, which has the effect to hinder, delay or defeat the disposition of his property by due course of law, is a fraud on his creditors. That he made it to prevent his property from being sacrificed, and thus intended to give protection to both his creditors and himself, affords no excuse or defence whatever. A creditor has a right to have his debtor's property applied to the discharge of his debts by due course of law, and any disposi-

tion which the debtor may attempt to make that has the effect to defeat this right, is a fraud against the creditor.     *Knight* v. *Packer, 1 Beas. 214; Johnson* v. *Whitwell, 7 Pick. 71.*

An attempt is made to distinguish this case from Owen *v.* Arvis.     It is argued that the preference attempted to be created in that case was adjudged to be fraudulent, because creditors in no way sanctioned or approved the disposition the debtor made of his property.   It is said he first made a fraudulent disposition of his property, and then attempted to purge his fraud by making an honest disposition of its proceeds.   But here it is insisted the act of the debtor is legalized, because it was done with the sanction of the creditors who were to be benefited by it.   This view, it will be perceived, entirely overlooks the fact that the act challenged is one that stands opposed to the fundamental policy of one statute and the plain direction of another.   Under such circumstances, it would seem to require no argument to show that the consent of those creditors who were benefited by the act should have no effect in legalizing it against those who were defrauded by it.   Without the aid of a part of his creditors, it is clear that the debtor could not, in the instance under consideration, have carried his illegal scheme into effect.   They are, therefore, more blameworthy than were those who, after their debtor had made a fraudulent disposition of his property, were induced to accept part of its proceeds, under the belief that they could get nothing else; and yet, in such a case, it has been held that a creditor must be presumed to know the law, and is, therefore, chargeable with knowledge of the fact that the disposition made by his debtor of his property was in fraud of the law, and he, by accepting part of the proceeds of the fraud, becomes tainted with his debtor's fraud.   *National Bank of the Metropolis* v. *Sprague, 6 C. E. Gr. 530.*

The transaction assailed in this case is, in my judgment, in contravention of both the statute regulating assignments and the statute of frauds, and must, therefore, be adjudged void as to the complainants.   The complainants are entitled to costs.