MARY ULICSNIK et al., complainants,

*v.*

CHARLES E. DALRYMPLE et al., defendants.

[Decided October 15th, 1928.]

1. Assignments made by a debtor, first of his stocks and bonds without consideration, to secure a claim in less amount than the value of the assigned property, and later of all of his remaining valuable property, to certain named creditors, *held,* to have been made with deliberate intent to defraud some or all of the creditors, and void within *1 Cum. Supp. Comp. Stat. 1911-24, pp. 647, 648, §§ 44-145, 44-150,* and *1 Comp. Stat. 1910, p. 114 § 1.*

2. Where the debtor made assignments of all valuable property which were fraudulent as to some or all of his creditors, appointment of a receiver was authorized by the court, where assets were held by different parties, valuable bonds had disappeared, and an accounting as to rentals received from real estate was necessary.

---

Appeal of Clara Seider et al.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Church, who filed the following opinion:

"This is a bill to restrain an auditor from collecting certain assets of one Otto G. Horster, and an answer seeking to set aside as fraudulent certain conveyances made by said Horster.

"On December 15th, 1925, Horster made an assignment to Louis Kempf. This assignment purported to convey ten shares of the Stuyvesant Development Company and certain bonds valued at $15,000. The present whereabouts of these bonds and their value does not appear. As collateral to this assignment a demand promissory note was given to Kempf in the sum of $35,000, for which there was no consideration, nor was there any for the assignment. It appears that Kempf orally agreed to hold the same in trust, first for the benefit

of the Union Cemetery Association for its claim now said to be $22,500 for a past due debt against Horster, and second, for the benefit of Horster as to any balance above said claim.

"The certificate of stock, assignment and note were held by Howard F. Kirk, attorney for Union Cemetery Association, and a letter was written to Stuyvesant Development Company to advise it of the assignment. .

"Another assignment was made on December 22d, 1925, to Mary Ulicsnik and others. This purported to convey all the property of Horster excepting a bank account of $500 and household goods. A deed to his real estate was at the same time given to the same parties. At the same time also a trust agreement in writing was entered into, which provided that the property conveyed was to be held in trust to secure the claims of six creditors therein named—excluding three named as defendants in this suit—and the claims of any other creditors which the trustees in their discretion might name.

"The trust allowed Horster to occupy the premises rent free and to continue the use of his law office equipment. Upon payment of debts, the balance was to be turned back to Horster.

"The· testimony shows that there was no bank account of $500, as all was owing to the bank, and that the household goods had been .in use at least twenty-five years and were practically of no value. No creditors have ever been offered the benefits of this trust.

"At the time these assignments were made, Horster owed defendants in this suit as follows: Ellen Minchin, $3,000; Mary E. Riley, $9,745.22; Margaret McLaughlin, $3,055.

"After these assignments Horster obtained from Ellen Minchin by fraud an additional $1,500. Judgments were· later entered for these amounts, except that of Ellen Minchin, which was increased to $4,692.50 to cover the $1,500 fraudulently obtained subsequent to the assignments.

"On March 20th, 1927, Ellen Minchin caused writs of attachment to issue out of the supreme court, and Charles E. Dalrymple was appointed auditor. He caused to be made by the sheriff of Hudson county a levy upon a certain certi-

fied check for $10,000, drawn by the Stuyvesant Development
Company for dividends, dated March 5th, 1926, and certified
March 13th, 1926, at the request of the maker.

"The defendants Riley and McLaughlin are applying credi-
tors who came into the attachment suit after the issuing of
the writs. This court granted a temporary restraint against
the auditor and directed him to deliver the check to the clerk
of this court pending an adjudication as to the validity of the
assignments above described and the settlement of the other
questions raised by the bill and answer.

"The first question to be decided is as to the regularity of
the assignments.

"The Uniform Fraudulent Conveyance act (*1 Cum. Supp.
Comp. Stat. 44-145 p. 647*) provides as follows:

" 'Every conveyance made and every obligation incurred by a person
who is or will be thereby rendered insolvent is fraudulent as to
creditors without regard to his actual intent, if the conveyance is
made or the obligation is incurred without a fair consideration.'

"And further, page 648-44-150:

" 'Where a conveyance or obligation is fraudulent as to a creditor,
such creditor, when his claim has matured, may, as against any person,
except a purchaser for fair consideration without knowledge of the
fraud at the time of the purchase, or one who has derived title im-
mediately or mediately from such a purchaser.

" 'A. Have the conveyance set aside or obligation annulled to the
extent necessary to satisfy his claim or

" 'B. Disregard the conveyance and attach or levy execution upon
the property conveyed.'

"The undisputed facts show that Horster was either insol-
vent at the time of these assignments or became so as a result
of them. The note for $35,000 was given for a past due debt.
The debt is now alleged to be $22,500. The assignment of
December 15th, 1925, transferred bonds stated to be worth
$15,000 and stock on which a dividend of $10,000 was about
to be paid. This makes the value of the property transferred
greatly in excess of the alleged indebtedness. Moreover, as
I have said, there was no consideration; the assignment was

to Louis Kempf personally and the trust agreement, if there was one, was not in writing.

"Again the act concerning general assignments (*Comp. Stat. p. 114 § 1*) provides:

" 'Every conveyance or assignment made by a debtor of his entire estate in trust to an assignee or assignees for the creditors of such debtor shall be made for their equal benefit in proportion to their several demands to the net amount that shall come to the hands of said assignee for distribution, and all preferences attempted to be made in such assignment of one creditor over the other, or whereby any one creditor shall be first paid or have a greater proportion in respect of his claim than another shall be deemed fraudulent and void.'

"The assignment of December 22d conveyed the entire estate of Horster. It was a trust for certain creditors named therein and excluded other creditors unless the assignees saw fit to admit them to the benefit of the trust.

"In the case of *Livermore* v. *McNair, 34 N..J. Eq. 478* (at *p. 483*), Vice-Chancellor Van Fleet said: 'The plain design of the arrangement was to place the debtor's property beyond the reach of legal process, so that he might still practically own and control it for the benefit of himself and certain of his creditors, and bid defiance to his other creditors. Such a design is vicious in the eye of the law. It contravenes not only the policy of the statute regulating assignments, but the plain direction of the statute of frauds. Any arrangements a debtor may make, which has the effect to hinder, delay or defeat the disposition of his property by due course of law, is a fraud on his creditors. That he made it to prevent his property from being sacrificed, and thus intended to give protection to both his creditors and himself, affords no excuse or defense whatever. A creditor has a right to have his debtor's property applied to the discharge of his debts by due course of law, and any disposition which the debtor may attempt to make that has the effect to defeat this right, is a fraud against the creditor.'

"The assignees, moreover, failed to take possession of the property. They permitted Horster to remain in possession of it; they allowed him to retain the use of his residence and his law office and made no attempt to collect the dividend of

$10,000 due from the Stuyvesant Development Company; they did not notify the Fidelity Union Trust Company, which held a valuable collection of stamps, of the assignment, and apparently permitted bonds valued in the assignment at $15,000 to vanish altogether.

"It is easy to see that his creditors could not have suspected the existence of these assignments in time to bring insolvency proceedings within the four months' period for setting aside preference.

"I am convinced that these assignments were made with the deliberate intent to defraud some or all of his creditors. In fact, he actually did defraud one of them after the assignment, Mrs. Minchin, to the extent of $1,500.

"I will advise a decree setting aside these assignments and the deed as palpably fraudulent.

"In view of the fact that the assets are now held by several different parties; that $15,000 worth of bonds has apparently disappeared; that the check for $10,000 is in the court of chancery uncollected; that there has been no accounting as to the rentals received from the real estate; that there may be assets yet undiscovered and that search should be made for the $15,000 worth of bonds above mentioned, I think a receiver should be immediately appointed, and this I will do.

"The receiver can then assemble the assets, and can, under the direction of the court, decide on the validity of the claims against the estate and their priority."

*Mr. Otto A. Stiefel* and *Mr. Arthur T. Vanderbilt,* for the complainants.

*Mr. Charles M. Meyers* and *Mr. Hugo Woerner,* for the defendants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Church.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, MCGLENNON, KAYS, HETFIELD, DEAR, JJ.    12.

*For reversal*—None.