The bill of complaint is brought by Philip Trachman, who recovered a judgment on May 9th, 1933, in the Essex county circuit court against Sam Trugman for $1,035.17 damages and $90.72 costs of suit, and prays discovery.
Sam Trugman had been in the wholesale produce business individually for twenty years, up to August, 1932. On July 9th of that year he gave a promissory note to the complainant, Philip Trachman, for $1,000. This was reduced to judgment May 9th, 1933, for a total, including costs, of $1,125.89.
In August, 1932, he formed a corporation consisting of himself, one share; his wife, four shares, and his aunt, five shares. About the same time he transferred a property on Osborne Terrace, Newark, which he and his wife owned jointly, to his wife. He now claims he is without funds to pay the judgment. If this be true, the incorporation and the transfer were fraudulent. Ulicsnik v.Dalrymple, 102 N.J. Eq. 136; affirmed, 103 N.J. Eq. 407; FirstNational Bank of Belleville v. Merrick, Ibid. 63; Krause v.Rollar, 112 N.J. Eq. 337. In Terhune v. Hackensack SavingsBank, 45 N.J. Eq. 344, the court of errors and appeals held that to organize a corporation and convey to it all one's assets is a fraud against creditors.
The conveyance of the real estate is not directly under attack in this proceeding. However, it indicates deliberate intention to escape responsibility for the judgment by divesting himself of his business and his real estate holdings as well. Therefore, if his own statement is correct, he formed the corporation to defraud his creditors. *Page 169 
On August 31st, 1932, his balance in the Rutherford National Bank was $1,423.99. His average monthly balances were $1,000. He did $1,500 to $1,600 worth of business weekly. His profits were from eight to ten per cent. or about $128 to $160 weekly. He says he deposited all his collections in the bank, but when his attention was called to the fact that he deposited nothing from August 31st to September 9th, 1932, he "could not remember." When asked what he did with a withdrawal of $261 on September 9th, 1932, "he could not remember." He was the president of the corporation; did the buying and selling, retained to himself the good-will, works the same route as before and serves the same customers. He drew money whenever he pleased for his own use from the corporation to buy furniture, pay personal notes and household expenses. The corporation did not hold regular meetings nor keep any minutes. Trugman's testimony was frequently contradicted, sometimes by himself, sometimes by his own witnesses. For instance, when he was asked if he had ever told his accountant what to put in the books or if the accountant had ever asked him what to put in the books, he answered, "no;" the accountant on the other hand testified he put in the books only what the defendant Trugman told him to put in. Again, he said he did not loan money to the corporation, but when testifying before Milton Unger, a supreme court commissioner, in supplementary proceedings, he said he loaned the corporation money. His testimony before Mr. Unger differed materially from his evidence in the present case, and when confronted with such material discrepancies, his answer was that he did not remember what he testified to at that hearing. The memory of his wife was also faulty. Her answers were almost exclusively "I don't remember." She remembered that she had no money of her own but could not remember where she got $100 every week to put in her bank account. She hesitatingly recollected, however, that she received some money from her husband — $1,700 at least — wherewith she paid his insurance and one of his personal notes.
The books of the corporation show flagrant attempts at *Page 170 
deception. Originally, entry therein showed $3,300 due to Trugman from the corporation. After the judgment was recovered the books were altered, at Trugman's direction, to show that the $3,300 was paid by Trugman's son for merchandise and the corporation then, according to the books, owed him nothing.
The circumstances surrounding the formation of the corporation and those which afterwards occurred spell fraud. Trugman says he received $500 from Mrs. Leibowitz for her stock which he deposited in the bank. The bank records show no such deposit. Trugman's wife testified before Mr. Unger that she borrowed $500 from Mrs. Leibowitz in order to purchase the stock. At this hearing she testified she did not remember so testifying and swore that Mrs. Leibowitz paid the money for the stock herself. The fact that the stock was first issued to Mrs. Trugman is declared to have been a mistake. It was corrected later (after the judgment was entered) by transferring the stock to Mrs. Leibowitz.
It is unnecessary to comment further on the contradictory, evasive and false testimony of Trugman and his wife. The conclusion is inevitable that the corporation was formed for the express purpose of defrauding creditors; that Trugman was solvent when it was formed, and that Trugman, individually, and Trugman, Incorporated, are one and the same. In other words, that the whole affair, as is said in Terhune v. Hackensack SavingsBank, supra, was "a hollow form, and not a substantial verity." The real object sought to be attained was to thwart impatient creditors, and to retain for himself and his family, in fraud of his creditors, the full and unmolested enjoyment of all his assets. "It must not be thought that courts are powerless to strip off disguises that are designed to thwart the purposes of the law." Stockton v. Central Railroad Company of New Jersey,50 N.J. Eq. 52. Where the corporate form is used by individuals for the purpose of evading the law, or for the perpetration of fraud, the courts will not permit the legal entity to be interposed so as to defeat justice.
Decree in accordance with the above conclusions. *Page 171