This is a bill by complainant against David Josephson, Equity Corporation and Celia Josephson, seeking discovery of assets of David Josephson, as well as to impress a lien on those assets, to the extent of the amount of a judgment obtained by complainant against David Josephson in the principal sum of $2,000, which judgment was entered February 16th, 1944.
A final decree has been entered, after final hearing, adjudging that complainant's judgment constitutes a lien against Josephson's interest in premises known as 11 South Oakland Avenue and 11 South Nashville Avenue, title to which is in Equity Corporation, subject to a first mortgage covering both properties in the sum of $46,800, and further, that all of the *Page 378 
stock of the Equity Corporation is owned by David Josephson and that a lien in favor of the complainant be imposed thereon in the amount of his judgment, interest and costs, subject, however, to the claim of Celia Josephson for moneys advanced by her to David Josephson in the sum of $26,721.96. The decree further enjoins David Josephson from further encumbering the real estate aforesaid, as well as the shares of stock in the Equity Corporation aforesaid, and from in any manner disposing of said stock or transferring it on the books of the corporation. From this final decree an appeal has been taken.
The question with which this court was confronted after final hearing was to what extent complainant was entitled to relief from this court in the enforcement of his judgment against Josephson's stockholding interest in Equity Corporation and against the real estate holdings of Equity Corporation, in which company Josephson was and is the beneficial owner of all of the capital stock, i.e., whether Josephson could hide his assets behind the corporate form in which he had placed these assets and thus defeat complainant in realizing on his judgment.
The facts upon which the decree was based were not, it seems to me, seriously controverted by defendants, but they argue that even so, the effect of the decree is violative "of the statutory conception of the corporation as an entity separate from its stockholders."
The facts developed at the final hearing established that Josephson had acquired title to two pieces of real estate situate in Ventnor City, New Jersey, known as 11 South Oakland Avenue and 11 South Nashville Avenue. The title as to these two properties had originally been taken by Josephson in his own name and that title was thereafter transferred by Josephson through various mesne conveyances to Equity Corporation, which Josephson caused to be formed and of which he was the sole stockholder.
It further appeared that Josephson erected apartment house buildings on both of the parcels of land aforesaid and that he became financially involved in so doing, with the result that his creditors were threatening to take control of the Nashville Avenue property. At this time Josephson was in *Page 379 
the armed forces of the United States and, taking advantage of the Soldiers and Sailors Relief Act, filed a petition in this court seeking relief under that act. To this petition Josephson's creditors filed a counter-claim, seeking in effect to foreclose against the Nashville Avenue property. That proceeding was entitled Josephson v. George J. Thomas et al. (docket 149, page 332), and in that petition Josephson alleged that he was the sole beneficial owner of the capital stock of the corporation then holding title to the Nashville Avenue property and therefore entitled to the relief provided for under the federal statute aforesaid. He obtained this relief to the end that he might be able to refinance his holdings in the Nashville Avenue property, as well as the Oakland Avenue property, and by a combination of the equities in both properties, pay all of his pressing creditors and prevent foreclosure. During the time necessary for the accomplishment of this refinancing it became apparent that the pressing creditors might seek to disturb by legal proceedings Josephson's equity in the company holding title to the Oakland Avenue property, with the result that Josephson had his attorney prepare a deed from the Equity Corporation to Josephson personally, conveying title to the Oakland Avenue property, this so that he might have title so that he could again obtain relief under the Soldiers and Sailors Relief Act aforesaid if it became necessary to avail himself thereof. True, this deed was not recorded, although it was executed, and the record of title to the Oakland Avenue property does not show this transaction, but it is merely evidence of the fact that Josephson was the sole owner of the stock of both corporations and could and did convey title in and out as he saw fit. The fact is that Josephson was enabled to refinance both properties. This was accomplished by putting title to both properties in the name of the Equity Corporation and causing that company to execute a mortgage covering both properties to the Phoenix Mutual Life Insurance Company in the sum of $46,800. This mortgage was dated September 30th, 1943. With the proceeds of this mortgage Josephson was enabled to satisfy his pressing creditors of both properties and to prevent foreclosure as to either of them. It was the complainant who *Page 380 
represented Josephson in the aforesaid transaction and his judgment represents the amount assessed by the jury as the value thereof.
It appears from the foregoing and from the evidence in the case that Josephson was at all times and still is the beneficial owner of all of the capital stock ever issued by any of the corporations created and used by him for the purpose of holding title to both the Nashville Avenue and the Oakland Avenue properties, and that he, as such owner, conducted, managed and controlled both properties, without the let or hindrance of any other stockholder in any of said companies.
With this situation as aforesaid, complainant attempted to levy on Josephson's interest in the stock of the Equity Corporation. The sheriff was advised that all of the stock of that corporation was held by Celia Josephson, a sister-in-law of Josephson, as pledgee to secure her for moneys advanced to Josephson, and that the stock was held by Celia in Philadelphia, Pennsylvania, where she resided. When complainant attempted to levy on Josephson's interest in the real estate, the title was in Equity Corporation, subject to the Phoenix Mutual Life Insurance Company's mortgage aforesaid. While complainant probably could have sold Josephson's interest in the real estate aforesaid, he chose, as he had a right to do, to file the present bill seeking to impose the lien of his judgment on the realty held by the Equity Corporation.
Of course, complainant's attempted levy on the stock interest of Josephson failed by reason of that stock being out of the jurisdiction of this court and in the possession of Celia Josephson, who resides in Philadelphia, Pennsylvania. Complainant had taken a decree pro confesso against Celia Josephson but the final decree dismissed the bill as to her, under the authority ofElgart v. Mintz, 123 N.J. Eq. 404; 197 Atl. Rep. 747. Celia, however, appeared as a witness at the final hearing and showed that she had advanced to Josephson $26,721.96 covering a period from 1928 to 1944, inclusive. The final decree provided for a lien against Josephson's interest in the Equity Corporation stock, subject to the amount of Celia's advancements as aforesaid. It may well be that more than half of the amount of these advancements *Page 381 
should be postponed to the lien of complainant's judgment, but this court, not having obtained jurisdiction over Celia by personal service in this state, was, as I conceive it, prevented from so decreeing.
From the foregoing statement it is apparent that the question for decision in this case is whether or not this court has jurisdiction to look behind the corporate form in which Josephson chose to transact his business and subject Josephson's assets in these corporations to the lien of complainant's judgment. As heretofore noted, defendants say that the decree entered is beyond the jurisdiction of this court.
There is no doubt that the separate entity of a corporation is well-recognized in this state. I so held in Murtland HoldingCo. v. Egg Harbor Bank, 123 N.J. Eq. 117, 122;196 Atl. Rep. 230, and the Court of Errors and Appeals in Jackson v.Hooper, 76 N.J. Eq. 592; 75 Atl. Rep. 568, held that "it is fundamental that, no matter how the shares of stock are held, the corporation itself is an entity wholly separate and distinct from the individuals who compose and control it." There are many cases so holding, among others White v. Evans, 117 N.J. Eq. 1;174 Atl. Rep. 731.
While the courts have held as aforesaid, there are exceptions to the rule, which exceptions permit the court to disregard the separate entity of the corporation "when the fiction of corporate entity is urged to an intent not within its reason or purpose."18 C.J.S. 376 et seq.
 The court, in Schmid v. First Camden Trust Co., 130 N.J. Eq. 254; 22 Atl. Rep. 2d 246, said:
"The difficulty is not in penetrating the corporate disguise to do justice, but in demonstrating that the corporation is, in fact, a disguise. * * * The facts presented must demonstrate the misuse of the corporate form and the necessity of disregarding it to do equity."
In Trachman v. Trugman, 117 N.J. Eq. 167;175 Atl. Rep. 147, the court held:
"Where the corporate form is used by individuals for the purpose of evading the law, or for the perpetration of fraud, the courts will not permit the legal entity to be interposed so as to defeat justice." *Page 382 
In Murtland Holding Co. v. Egg Harbor Bank, supra, the court held that where the corporate form is used as a shield behind which injustice is sought, equity penetrates the shield, casts it aside, and does equity. In McKeague v. Armstrong,50 N.J. Eq. 309, 311; 24 Atl. Rep. 398, the court said:
"A creditor has a right to have his debtor's property applied to the decrease of his debts by the due course of law, and any disposition which a debtor may attempt to make that has the effect of defeating this right, is a fraud against the creditor."
See, also, Livermore v. McNair, 34 N.J. Eq. 478. It has further been held that "although a conveyance may not have been fraudulent in its inception, yet a court of equity will interpose to prevent a subsequent use thereof for a fraudulent purpose."27 C.J. 467 § 106. See, also, Cohen v. Dwyer, 133 N.J. Eq. 226; 31 Atl. Rep. 2d 764; affirmed, 134 N.J. Eq. 350;35 Atl. Rep. 2d 709. In Newark Ladder, c., Co. v.Furniture Workers Union, c., 125 N.J. Eq. 99; 4 Atl. Rep.
2d 49, it was held that "the corporate fiction has been ignored most frequently in fraud cases, but also in suits of every nature where justice will thereby be advanced." See, also,Schmid v. First Camden National Bank, supra.
There may be no question, it seems to me, that Josephson is the owner of all of the capital stock of Equity Corporation, subject to the pledge of his sister-in-law and subject to her rights as pledgee, and that being the owner thereof, equity will not permit that he withhold his interest in that stock from his judgment creditors. It seems likewise apparent that Josephson is the owner of all of the stock of the Equity Corporation, in which company he has seen fit to repose title to the Nashville Avenue and the Oakland Avenue properties, and that he is withholding that equity in those properties from his creditor, the complainant in this case. It seems likewise evident that to permit Josephson to prevent his creditor from gaining satisfaction of his judgment through the use of the corporate form would impose an injustice on the complainant and enable Josephson to accomplish that injustice and force this court to admit that equity is powerless to prevent it. *Page 383 
It will be observed, as between David Josephson and complainant, that there are no intervening equities to prevent the imposition of the lien of complainant's judgment against the apartment house properties of Equity Corporation, excepting that of the mortgage, which is taken care of in the decree. It will also be observed that Celia Josephson's security for the moneys advanced by her to her brother-in-law is the stock of the Equity Corporation, which she holds as pledgee, which does not, of course, give her any lien on the real estate holdings of the Equity Corporation. Her claim for moneys loaned to Josephson is an old one, in the main, and she could have reduced that claim to judgment at any time. She has not seen fit to do so and complainant has his judgment.
The final decree has been advised, based on these findings.