**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1994-20

COLONIAL RECORDS
STORAGE, LLC,

      Plaintiff-Respondent,

v.

NANCY S. SIMPSON, ESQ.,
d/b/a STEIN, SIMPSON &
ROSEN, P.A.,

      Defendant-Appellant.

_____

Submitted November 10, 2021 – Decided December 9, 2021

Before Judges Fuentes and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. DC-007491-20.

Nancy S. Simpson, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

In this one-sided appeal, defendant Nancy S. Simpson, an attorney appearing pro se, appeals from a March 12, 2021 final judgment for $14,049.51 entered in favor of plaintiff Colonial Records Storage, LLC (Colonial) following a bench trial in the Special Civil Part. We reverse.

On July 11, 2020, Colonial, a company that stored, shredded, and delivered retained business records for professionals, filed a complaint against "Nancy S. Simpson, Esq. . . . d/b/a Stein Simpson & Rosen, P.A." for overdue storage fees. At the trial conducted on March 12, 2021, Colonial's Vice President and General Manager, Mark Lillo, testified that since 1993, Colonial provided record storage services to defendant Simpson d/b/a Stein Simpson & Rosen, P.A., a New Jersey domestic professional corporation[1] engaged in the business of providing legal services. However, in 2017, the firm stopped paying Colonial's invoices despite Colonial's repeated demands for payment. Lillo confirmed Simpson never provided legal services for Colonial and their business relationship was related exclusively to record storage services.

---

[1] A professional corporation is "a corporation . . . organized under [The Professional Service Corporation Act] for the sole and specific purpose of rendering the same or closely allied professional service as its shareholders, each of whom must be licensed or otherwise legally authorized within this State to render such professional service." N.J.S.A. 14A:17-3(2).

Although the law firm no longer "provid[ed] legal services," Simpson acknowledged "[i]t ha[d] not been formally dissolved." Simpson admitted being "a shareholder" of the law firm and practicing law "as a member of the firm" until she retired. However, Simpson denied being personally responsible or having assumed responsibility for any services provided by Colonial to the firm. In contrast, Lillo testified that all the files it stored belonged to Simpson, the firm was Simpson's firm, and Simpson and her secretary were the only members of the firm with whom Colonial communicated. Nonetheless, while it was unclear whether all payments on the account "came from [the] firm[,]" all the invoices submitted by Colonial to support its claim were billed to the firm, not Simpson. Further, Colonial could not produce a record storage service agreement or any writing evidencing that Simpson promised to be personally liable for the charges.

In an oral decision, the judge credited Lillo's testimony and determined although there was no written storage agreement, there was "an oral agreement" for services dating back to 1993 between Colonial and the firm of which Simpson, by her own admission, was a shareholder. The judge found Colonial proved that monthly unpaid storage fees had accrued from Colonial's retention of the firm's records and Colonial's continuous attempts to obtain payment went

3

unheeded. Although there was no written storage agreement indicating whether the services were contracted in the name of the firm or Simpson, because Simpson failed to produce any documentation "delineating the nature of the [shareholder agreement] []or absolving her of any personal liability," the judge rejected "Simpson's testimony that as a shareholder, she [held] no personal liability for the fees . . . accumulated on behalf of the firm." Instead, based on her reading of N.J.S.A. 14A:17-8, the judge concluded shareholders of a professional corporation are "personally and fully liable and accountable for any act and for professional services rendered on behalf of the corporation." As a result, the judge found Simpson personally liable for the unpaid fees due Colonial and entered a memorializing order of judgment for the amount sought in Colonial's complaint. This appeal followed.

On appeal, Simpson argues that as a shareholder in Stein Simpson & Rosen, she was not liable for debts that did not arise out of the performance of "professional services" by her or the firm under N.J.S.A. 14A:17-8. Simpson asserts because Colonial did not claim any professional services were rendered in connection with the unpaid storage fees nor allege she misused the corporation, the judge erred in finding her liable for "any act" of the corporation. Additionally, Simpson argues there was no evidence presented at trial that she

had undertaken financial responsibility for the services provided by Colonial in her personal or individual capacity. Simpson contends the fact that Lillo testified the stored files belonged to her personally does not deprive her "of the protective shield of the corporation nor . . . operate to make [her] liable for its debts."

Ordinarily, "'we do not disturb the factual findings and legal conclusions of the trial judge'" in a bench trial "'unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting In re Tr. Created By Agreement Dated December 20, 1961, ex rel. Johnson, 194 N.J. 276, 284 (2008)). However, "[q]uestions of law receive de novo review." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Here, we agree with Simpson that the judge misapplied the protection against personal liability afforded under N.J.S.A. 14A:17-8 and the resulting imposition of personal liability on her was error.

N.J.S.A. 14A:17-8 provides:

> Any officer, shareholder, agent or employee of a professional corporation . . . shall remain personally

and fully liable and accountable for any negligent or wrongful acts or misconduct committed by him, or by any person under his direct supervision and control, while rendering professional service on behalf of the corporation in this State to the person for whom such professional service was being rendered; provided, that the personal liability of shareholders of a professional corporation, in their capacity as shareholders of such corporation, shall be no greater in any aspect than that of a shareholder-employee of a corporation organized under the provisions of the Business Corporation Act of New Jersey, exclusive of this act.

Thus, under N.J.S.A. 14A:17-8, a shareholder cannot escape personal liability for her own negligence or misconduct while rendering services on behalf of a professional corporation. See Lederman v. Prudential Life Ins. Co. of Am., Inc., 385 N.J. Super. 324, 347 (App. Div. 2006) ("Under both New York and New Jersey law, a shareholder of a professional corporation is only liable for his own negligent or wrongful misconduct or the conduct of an employee he supervises." (citing N.J.S.A. 14A:17-8)). However, shareholders of a professional corporation, in their capacity as shareholders, have the same protections from liability that a shareholder of any other corporation would have. N.J.S.A. 14A:17-8.

"'[A] primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise.'" Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc., 195 N.J. 457, 472 (2008) (quoting N.J. Dep't of

Env't. Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983)). To that end, N.J.S.A. 14A:5-30(2) declares "[u]nless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally liable for the acts of the corporation, except that a shareholder may become personally liable by the reason of his own acts or conduct." For example, "'[a]n individual may be liable for corporate obligations if he was using the corporation as his alter ego and abusing the corporate form in order to advance his personal interests.'" Sean Wood, L.L.C. v. Hegarty Grp., Inc., 422 N.J. Super. 500, 517 (App. Div. 2011) (quoting Casini v. Graustein (In re Casini), 307 B.R. 800, 811 (Bankr. D.N.J. 2004)). Thus, "[w]here the corporate form is used by individuals for the purpose of evading the law, or for the perpetuation of fraud, the courts will not permit the legal entity to be interposed so as to defeat justice." Karo Mktg. Corp., v. Playdrome Am., 331 N.J. Super. 430, 442 (2000) (quoting Trachman v. Trugman, 117 N.J. Eq. 167, 170 (Ch. Div. 1934)).

Here, Colonial was not a client of the firm and produced no evidence to show Simpson, in her personal capacity, was a party to the storage service agreement it maintained with the firm. Instead, the record showed all of Colonial's invoices for services rendered identified the firm as the debtor, not Simpson personally. Further, the judge did not find the firm was Simpson's alter

7

ego or that Simpson had abused the corporate form. See Marascio v. Campanella, 298 N.J. Super. 491, 502 (App. Div. 1997) (holding a shareholder who allegedly paid some corporate obligations from a personal checking account did not provide a basis for piercing the corporate veil to impose personal liability on the shareholder); Arrow Mfg. Co., v. Levinson, 231 N.J. Super. 527, 533-34 (App. Div. 1989) (setting aside a judgment because there was insufficient evidence to pierce the corporate veil and hold the individual personally liable for the corporate debt). Consequently, as an attorney-shareholder, Simpson had no personal liability for the firm's unpaid invoices for storage services. Undoubtedly, Colonial has the right to sue the firm and obtain a judgment against it.[2] However, on these facts, contrary to the judgment entered in favor of Colonial, Simpson is not personally liable for the storage fees.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] In fact, the judge found "because the firm [had] not formally dissolved," both "Simpson and the firm" remained "responsible for the balance due . . . to Colonial."

A-1994-20